# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. HARP, Minor.

UNPUBLISHED
October 9, 2018

Nos. 343267 & 343268
Dickinson Circuit Court
Family Division
LC No.  17-000501-NA

Before:  MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

In this consolidated appeal,[1] respondent-mother and respondent-father appeal as of right the trial court's order terminating their parental rights to their son, CH, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication have not been rectified and will not be rectified in a reasonable amount of time), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).  We affirm.

## I. BACKGROUND

On January 10, 2017, the Department of Health & Human Services (DHHS) filed a petition to remove CH from respondents' care.  The petition raised concerns that CH's home environment was unsanitary and that the low-income housing commission had informed respondents that they were at risk of losing their apartment if they did not improve its cleanliness.  Additionally, the petition alleged that respondent-father would leave his psychotropic medication in reach of CH without the lid on and that respondent-mother had refused mental-health services.  The petition also alleged that CH was at substantial risk of harm because respondents placed him to sleep in a bassinet, which was not an age-appropriate resting place for the child, and that CH was scratched by a cat that was not current in its vaccinations.  A DHHS employee took photographs of respondents' apartment and attached them to the petition.  The photographs depict dirty dishes and garbage strewn about on furniture and on the apartment's floor, empty soda cans on the floor, boxes and clothing on the ground, soiled cat

---

[1] See *In re Harp*, unpublished order of the Court of Appeals (Docket Nos. 343267 and 343268), entered April 26, 2018.

litter boxes, pill containers next to a highchair, and dirty diapers visible on top of the trash. A photograph depicting a scratch on CH's back was also attached to the petition.

CH was removed from respondents' care that same day, and, a couple of weeks later, respondents entered pleas of admission to the allegations outlined in the petition. The trial court accepted respondents' pleas, and DHHS recommended that respondents participate in an infant mental-health program; that respondent-mother arrange a mental-health evaluation; that respondent-father place his medications in a lockbox or medicine cabinet; that respondent-father take his medications as prescribed; and that respondents maintain a clean and sanitary home at all times. The trial court ordered that respondents comply with all DHHS recommendations.

A month later, Samantha Pietrantonio, a DHHS employee, visited respondents' apartment and found it to be dirty and full of unwashed dishes. Pietrantonio additionally reported that after asking respondent-father whether he and respondent-mother could work together as a team to clean their home, respondent-father complained that respondent-mother "doesn't do anything" and that "he has to work and clean and cook and do all of it and he is sick of it."

The next month, Mariah Schewe, a supervised visitation monitor and parent aide who worked with respondents through DHHS, reported that respondents were both unemployed, but had spent the entirety of a sizable tax refund they received on new computers. Schewe witnessed respondent-mother tell a friend that "her cat and [CH] are equally as important as each other." Later that month, Schewe offered to help respondents with house cleaning, but respondent-mother declined Schewe's proposed assistance.

Three months into the service plan, respondent-mother left a visitation with CH early after becoming upset with a case worker. The next day, after being warned that leaving visits early would not be seen as a positive parenting attribute, respondents left a visitation with CH early. Later that month, Schewe reported that she "[e]nded visit[ation] [with CH] early because of [respondents'] unclean living room. I brought CH into the home for a visit. Immediately I smelled a strong odor of cat urine." Laurie Massie, a DHHS worker, reported that respondents sometimes returned CH to the foster-care parent before their allotted visit time was finished, and that respondents had been previously asked to complete full visitations with CH. Massie testified that, on one occasion, after becoming frustrated that she did not approve respondents' apartment for parenting time, respondent-mother cursed at her, called her names, and refused to participate further in the visit with CH. At a review hearing, respondent-father admitted that he sometimes forgot to take his medications.

Between May and October 2017, DHHS reported on numerous occasions that respondents' apartment was unacceptably dirty and unfit for a visitation with CH, and that the dangerous items noted previously were still a concern. At an October review hearing, the trial court continued orders concerning the need to maintain a clean apartment, and again expressed concerns about the condition of their home. From August 2017 to December 2017, respondents failed to pay rent on time, and they had an outstanding balance of approximately one month's rent for the entirety of the period.

The trial court held a dispositional review and permanency planning hearing on January 8, 2018. Respondent-mother admitted that respondents did not consistently keep their apartment

clean, and that they could have been more consistent about its upkeep. Respondent-mother stated that she sometimes refused to clean the apartment because she resented the fact that respondent-father did not help her. Elizabeth Hellman, an Infant Mental Health worker, worked with the family during the pendency of the case. She testified that, at times, respondents refused her recommendations and missed opportunities to have additional time with CH because they were not accommodating. She testified that appointments made on respondents' behalf for home cleaning services, job assistance, and housing assistance were later canceled by respondents. Susan Bottesi, the mother of respondent-mother, testified that respondent-mother "doesn't like to take advice."

The trial court found that respondents did not benefit from the services provided and directed DHHS to file a termination petition. DHHS filed the petition and the trial court held a termination trial in March 2018. At trial, Calley Dittrich, a DHHS worker, testified that respondents had made no progress since the permanency planning hearing in January 2018. She stated that respondent-mother cancelled two home visitations during this time and that, when an unannounced home visit was conducted, "the [apartment] was found to be inappropriate if visitation was going to occur. There were a lot of safety hazards [for CH]." Dittrich testified that respondents conducted in-home parenting time with CH twice per week, but stated that "generally on every visit there is a room in the home that needs improvement."

Dittrich testified that respondent-father missed 50 percent of his scheduled counseling appointments, and that, because of his absences, the services proposed had been reduced by providers. Schewe testified that, when she visited respondents' apartment, there were usually dirty dishes scattered about, the eating surface of CH's highchair was usually dirty, the bathroom was dirty, and respondents' bedroom was "usually not acceptable." Schewe testified that CH was very mobile and was "walking and running and jumping and crawling up onto the couch by himself and up on the back of the couch by himself; onto tables; onto chairs." She stated that, due to his age, CH frequently had his hands on the floor, and reached for objects and put them in his mouth. Given that soda cans still riddled respondents' floor, CH's safety in the home was a concern. Schewe stated that, at family team meetings with respondents, she, at numerous points, discussed the dangers posed by leaving objects about that CH could put in his mouth or that could cut him.

Schewe stated that respondents' apartment was deemed unacceptable for a visit with CH as recently as two weeks before trial, due to the presence of soda cans and numerous electronics cords on the floor, as well as medications that were left out where CH could grab them. When confronted about the state of the home, respondent-mother attempted to ignore Schewe. Emily Rexes, a home-based care manager who worked with respondents, testified that three weeks before trial, she observed that respondents' apartment was dirty, and that there were garbage, old food, and dishes within CH's reach.

The trial court found that statutory grounds existed to terminate respondents' parental rights to CH. The trial court determined that termination of respondents' parental rights was in CH's best interests because respondents had problems managing rudimentary aspects of their lives, i.e., basic home upkeep and paying their rent on time. The trial court also stated that respondent-mother's confrontational personality, inability to take suggestions, and resistance to positive changes, in addition to her willingness to terminate visitations early and turn down

additional visitations with CH due to problems she had with DHHS workers, were reflective of her inability to provide proper guidance and nurturing to CH. The trial court stated that "for whatever reason, taking care of [the hazards in the apartment] for a child of his age has been too difficult [for respondents.]" The trial court considered the length of time CH spent in foster care, the mental and physical health of the parties, reports of domestic violence, the help respondents enjoyed from their relatives, whether reasonable efforts were made to prevent termination, and CH's age before making its termination decision. Ultimately, the trial court terminated respondents' parental rights to CH.

This appeal followed.

## II. ANALYSIS

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356–357; 612 NW2d 407 (2000); see also MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296–297; 690 NW2d 505 (2004).

*Statutory Grounds*. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Respondents argue that the trial court clearly erred in determining that DHHS presented sufficient evidence to terminate their parental rights to CH under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). We disagree.

At the time of the termination proceedings, MCL 712A.19b(3) provided that statutory grounds exist to terminate parental rights if:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be

-4-

able to provide proper care and custody within a reasonable time considering the child's age.[2]

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The initial petition alleged that respondents did not provide proper care to CH and that CH would be harmed if he remained in respondents' care because of the unsanitary and dangerous conditions of their home. Over the course of more than a year, respondents were offered numerous services to address these concerns, but failed to make any measurable progress. Several caseworkers testified that respondents' home was in such a state of disarray that it was dangerous for CH to be present there. The apartment floor was riddled with soda cans, garbage, and electrical wires, each of which posed a safety hazard to CH. This was especially concerning to caseworkers who noted that CH was very mobile and prone to picking items up and placing them in his mouth. Additionally, CH's eating area was unclean and respondent-father's psychotropic medication was left within the child's reach. Respondents were offered home-cleaning services, but rejected the offers or cancelled the appointments.

Additionally, respondent-father failed to take his mental-health medications consistently and also failed to attend many of his scheduled counseling sessions. Respondent-mother denied help from service providers to assist in coming into compliance with court orders and DHHS expectations, and she sometimes refused to see CH because of her personal disdain for DHHS service providers. Indeed, respondent-mother was not only noncompliant with her service plan, but actually confrontational with caseworkers. Respondents used a considerable tax refund to buy personal computers for themselves, despite being consistently behind on their rent, facing eviction, and being under investigation by DHHS for neglecting to provide a proper home environment for CH.

Respondent-father argues that he was not provided reasonable services to address his parenting deficiencies. The record belies this assertion. Both respondents were provided

---

[2] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the version of the statute in effect at the time of the trial proceedings, termination is appropriate if "[t]he parent, *without regard to intent*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) (emphasis added). Under the new version of the statute, termination is appropriate if "[t]he parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58 (emphasis added).

numerous services but failed to engage in the services offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). More than a year after being informed that their lifestyle posed significant risks to their child, respondents failed to take the steps necessary to ensure CH's safety while in their care. As of the termination trial, there remained a significant risk that CH would be harmed if returned to respondents' care and, given respondents' ambivalence to the hazards in their home and confrontation with caseworkers, there was no reasonable likelihood that respondents would be able to provide a safe environment for CH within any reasonable time. The trial court did not err by finding that statutory grounds existed to terminate respondents' parental rights to CH under MCL 712A.19b(3)(c)(*i*), (g), and (j).[3]

*Best Interests.* "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id.*, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). Other relevant factors include any "history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714.

Respondents contend that the trial court did not properly assess whether termination of their parental rights was in CH's best interests because the trial court relied on the same information it used to make its statutory-grounds determination in making its best-interests determination. Respondents provide no legal authority to support their suggestion that a trial court is foreclosed from using the same evidence in making a best-interests determination as it used to make a determination concerning the statutory grounds for termination. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis of his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v*

---

[3] The trial court cited MCL 712A.19b(3)(*l*) (termination of parental rights to another child) as an additional basis for termination of respondent-mother's parental rights (but not respondent-father's). Respondent-mother does not challenge this finding on appeal. Nonetheless, in *In re Gach*, 315 Mich App 83, 97; 889 NW2d 707 (2016), this Court held that MCL 712A.19b(3)(*l*) "violates the Due Process Clauses of the federal and state Constitutions." Accordingly, effective June 12, 2018, this ground has been removed from MCL 712A.19b. See 2018 PA 58. Nonetheless, because other grounds existed to terminate respondent-mother's parental rights to CH, any error with regard to MCL 712A.19b(3)(*l*) is immaterial to this dispute.

*Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (cleaned up).  More importantly, it is entirely proper for a trial court to consider the same evidence in its statutory-grounds and best-interests analyses.  Indeed, the trial court may consider the entire record when making its best-interests determination.  *Trejo*, 462 Mich at 353; *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); *In re La Flure*, 48 Mich App 377, 391; 210 NW2d 482 (1973).

Respondents also argue that the trial court failed to use the multifactor analysis as elaborated in *In re Olive/Metts*, 297 Mich App at 41-42, when making its best-interests determination.  Respondents' argument is not reflective of the trial court's best-interests evaluation as a review of the record shows that, before making its best-interests determination and terminating respondents' parental rights, the trial court did indeed consider CH's age, respondents' lack of compliance with the DHHS case-service plan, the deficiency of their parenting skills, CH's need for permanency, and the likelihood that CH could not be returned to their home in the foreseeable future.

The evidence demonstrates that respondents consistently failed to comply with the case service plan, that they prioritized their personal needs over their financial obligations, and that they could not be expected to rectify the conditions that posed a danger to CH.  Respondents' inability to provide for CH's safety supports the trial court's finding that termination was in CH's best interests.  The trial court did not clearly err by terminating both respondents' parental rights.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle